IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEVERLY MCHERRIN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 09-2035 |
| v. | : | |
| | : | **FILED** |
| MICHAEL J. ASTRUE | : | AUG 3 1 2010 |
| Commissioner of the Social Security | : | |
| Administration | : | MICHAEL E. KUNZ, Clerk |
| | : | By_____ Dep. Clerk |
| Defendant. | : | |

## OPINION AND ORDER

**Slomsky, J.**                                                                                    **August 31, 2010**

### I.     INTRODUCTION

Before the Court is Defendant Commissioner of Social Security's Objections to the Magistrate Judge's Report and Recommendation. (Doc. No. 14). On May 11, 2009, Plaintiff filed a Motion for Leave to Proceed In Forma Pauperis. (Doc. No. 1). On May 13, 2009, Plaintiff filed her Complaint, (Doc. No. 13), alleging wrongful denial of Social Security Disability Insurance and Supplemental Security Income. The case was referred to Magistrate Judge Arnold C. Rapoport for a Report and Recommendation, (Doc. No. 7). On September 4, 2009, Plaintiff filed a Motion for Summary Judgment Or, in the Alternative, Motion for Remand, and a Brief and Statement of Issues in Support of Request for Review and Motion for Summary Judgment (Doc. No. 8). On November 5, 2009, Defendant filed a Response to Request for Review of Plaintiff (Doc. No. 10). On April 14, 2010, Judge Rapoport issued his Report and Recommendation, (Doc. No. 13), and on April 27, 2010, Defendant filed his Objections (Doc. No. 14). Plaintiff filed a Reply in Opposition

to Defendant's Objections (Doc. No. 15) on May 5, 2010, and a hearing was held on the Objections on July 14, 2010.

After an independent review of the record, and for the following reasons, the Report and Recommendation of Magistrate Judge Rapoport will be approved and adopted, the Commissioner's decision will be vacated, and the matter will be remanded to the Commissioner for further consideration.

## II.     PROCEDURAL HISTORY

On December 28, 2005, Plaintiff Beverly McHerrin filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits. In her application, Plaintiff alleged she has a disability that began on March 27, 2005 that resulted from DeQuervain's tenosynovitis, human immunodeficiency virus (HIV positive status), cervical radiculopathy, knee pain, degenerative joint disease, and depression. On February 24, 2006, the application was denied. On April 5, 2006, Plaintiff filed a written request for a hearing before the Administrative Law Judge ("ALJ"). On June 28, 2007, the ALJ held the hearing requested by Plaintiff. During the hearing, Plaintiff and a Vocational Expert ("VE") testified.

On August 31, 2007, the ALJ concluded that Plaintiff was not disabled. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or were medically equal to the Commissioner's Listing of Impairments. (Administrative Record, 16 (hereinafter "R.")). The ALJ also determined that Plaintiff possessed the residual functional capacity ("RFC") to engage in a limited range of sedentary work, and that she could return to her previous work as a surveillance system monitor. (R. 8).

## III.    LEGAL STANDARD

The issue before the Court is whether the record shows substantial evidence to support the Commissioner's final decision that Plaintiff is not disabled. 42 U.S.C. § 405(g). "Substantial evidence" is such relevant evidence that a reasonable mind might accept as adequate to support a decision. Cherry v. Barnhart, 29 Fed. Appx. 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). See Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). This Court must accept any findings of fact made by the Commissioner as conclusive, if they are supported by substantial evidence. 42 U.S.C. § 405.

When the ALJ makes his decision on behalf of the Commissioner,[1] he is required to consider all relevant evidence in the record and provide some indication of what evidence he rejected and why he rejected it. See Ray v. Astrue, 649 F. Supp. 2d 391, 402 (E.D. Pa. 2009), (quoting Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)).

The Court's determination that the Commissioner's decision is supported by substantial evidence is the first step in this Court's review. The Court must also determine if the ALJ applied the proper legal standards in evaluating a claim of disability. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984).

A claimant proves she has a "disability" when she demonstrates a medically determinable basis for an impairment that prevents her from engaging in any "substantial gainful activity for a

---

[1] Title 42 U.S.C. § 405, which governs the procedure for the review of benefit applications, administrative hearings, and appeals to district courts, states that findings of fact and decisions as to eligibility for benefits are made by the Commissioner. Pursuant to § 405(b)(1), if an applicant wishes to contest a decision of the Commissioner, the Commissioner must offer the applicant a hearing at which evidence is adduced, and the Commissioner must then affirm, modify or reverse his prior decision. The ALJ conducts the hearing on behalf of the Commissioner and issues the decision which affirms, modifies or reverses the prior decision under § 405. Therefore, the titles "ALJ" and "Commissioner" may be used interchangeably throughout this opinion.

statutory 12-month period." 42 U.S.C § 423(d)(1).

In order to determine if a claimant possesses an impairment that prevents her from engaging in any substantial gainful activity, the Commissioner evaluates five factors. Soc. Sec. Ruling 00-4p (hereinafter "SSR 00-4p").

The sequence of review of the five factors is as follows:

(1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled;

(2) if the claimant does not suffer from a "severe impairment," she will be found not disabled;

(3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at lease twelve months, then the claimant will be found disabled;

(4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment – if she can, she will be found not disabled;

(5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy.

See § 404.1520(b)-(f).

## IV. FACTS

As part of her review of the facts, the ALJ found that Plaintiff is a woman in her forties

-4-

who suffers from DeQuervain's tenosynovitis, HIV, cervical radiculopathy, knee pain and depression. (R. 15). Plaintiff has seen a chiropractor and a rheumatologist in the past for her back and neck pain. (R. 18). She has been treated with anti-inflammatory drugs for her tenosynovitis. (R. 19). Plaintiff has not been engaged in substantial gainful employment under Step 1 of the Social Security Administration's regulations. The ALJ found that Plaintiff's tenosynovitis, HIV positive status, cervical radiculopathy, knee pain, and depression were severe impairments under Step 2 of the above sequence. (R. 16). However, the ALJ found that these severe impairments, either alone or in combination, did not meet or equal one of the Commissioner's listed impairments in 20 C.F.R Part 404 Subpart P, as required under Step 3. (Id).

Next, the ALJ considered Plaintiff's RFC to determine if she was capable of returning to her past employment under Step 4.[2] Plaintiff had previously worked as a dispatcher, reservation clerk, inventory clerk, housekeeper, telephone solicitor, and surveillance system monitor. (R. 20).

After analyzing the record in its entirety, the ALJ concluded that Plaintiff had the RFC capacity to lift and/or carry ten pounds, sit with normal breaks for six hours in an eight-hour work day, stand and/or walk with normal breaks for two hours in an eight-hour day, and no push/pull limitations. (R. 17). The ALJ limited Plaintiff to the following nonexertional activities: occasional

_____

[2]The ALJ follows a two step process when deciding a claimant's RFC. At step one, the ALJ looks to determine whether there is an underlying medically determinable physical or mental impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques, which could reasonably be expected to produce the claimant's pain or other symptoms. (R. 17). At step two, if an underlying physical or mental impairment(s) can be shown, the ALJ then evaluates the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. Id. The ALJ evaluates the medical records provided by healthcare professionals to determine whether they corroborate Plaintiff's description of her ailments. Id.

postural activity, no constant hand use, simple repetitive tasks, and occasional changes in the work setting. (Id.)

The ALJ concluded that based on her RFC, Plaintiff was qualified for sedentary work. (Id.) The ALJ further determined that Plaintiff was capable of returning to her past relevant work as a surveillance system monitor based on the VE's testimony that the surveillance system monitor position conforms with the limitations in Plaintiff's RFC. (R. 20). In accordance with Step 4 of the Social Security Act's Guidelines, the ALJ determined Plaintiff was not disabled. (Id.)

## V.    DISCUSSION

### A. Background

In this case, the issue in dispute is whether the claimant is truly not disabled because, as found by the ALJ, she can perform her former duties as a surveillance system monitor. In order to determine if the claimant can perform the work she has performed in the past, the Commissioner is required to analyze several sources of information.

One source of information used to determine if a claimant is capable of performing her past work is the Dictionary of Occupational Titles ("DOT"). The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job. Soc. Sec. Ruling 00-4p (hereinafter "SSR 00-4p"). Within each listing, the DOT breaks down the requirements necessary to perform a job. While there are several categories of requirements in each DOT listing, the two requirements at issue here are the Specific Vocational Preparation ("SVP") levels and the reasoning levels. In the DOT, SVP levels refer to the actual skill level necessary to perform the listed job. SSR 00-4p. A skill is defined as knowledge of a work activity that requires the exercise of significant judgment that goes beyond

the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level. Id. DOT reasoning levels refer to informal and formal levels of education required for satisfactory job performance. DICOT, App. C.

The Commissioner also consults the Code of Federal Regulations ("CFR"). In the CFR, the Commissioner has promulgated regulations for categories of work available in the national economy. The CFR lists three work categories: unskilled, semi-skilled, and skilled. 20 C.F.R. § 416.968. The CFR's three work categories correspond with the SVP levels listed in the DOT. SSR 00-4p. For example, unskilled work specifically corresponds with the DOT's SVP of 1-2. SSR 00-4p. However, the CFR does not specify what reasoning level is necessary to perform each skill level, and the CFR skill groupings do not correspond with the DOT reasoning levels.

If claimant requests an administrative hearing during the application phase, the ALJ, who performs the hearing on behalf of the Commissioner, will also rely on the testimony of a VE. Id. The Social Security Administration promulgated a ruling, Soc. Sec. Ruling 00-4p, to govern how the VE's testimony should be used during the administrative process. Id. The ruling emphasizes that before making a final determination, the ALJ must first identify and obtain a reasonable explanation for any conflicts between the VE testimony and the DOT. SSR 00-4p. A claim is unlawfully denied if the ALJ denies the claim without first discussing and resolving conflicts between the VE's testimony and the DOT.

## B. Argument

Plaintiff filed this claim to dispute the ALJ's conclusion that a claimant with an RFC limiting her to simple, repetitive tasks could perform the work of a surveillance system monitor. (Doc. 15 at 1). The ALJ relied on the testimony of the VE in ruling Plaintiff could perform her

past work as a surveillance system monitor. Plaintiff contends that the DOT describes the position of surveillance system monitor as requiring level 3 reasoning skills and for this reason it conflicts with the RFC established for Plaintiff by the ALJ and accordingly is not work that Plaintiff can perform. (Id.)[3]

However, based on the ALJ's findings, which limit her to simple repetitive tasks, Plaintiff possesses only level 1 or level 2 reasoning skills. (Doc. 15 at 2). Therefore, Plaintiff contends that the level 3 reasoning applicable to surveillance system monitor is beyond her ability. (Doc. 15 at 6). Plaintiff argues that her claim was unlawfully denied because a conflict between the VE's testimony as credited by the ALJ and the DOT was not resolved before the ALJ made her final determination. (Id.)

The Magistrate's Report and Recommendation found that a limitation to simple, repetitive tasks is inconsistent with a job requiring level 3 reasoning skills; consequently, a discrepancy between the VE's testimony and the DOT existed at the time the ALJ made her final decision. (Doc. 13 at 9). The Magistrate held that the ALJ had a duty to consider the discrepancy between the VE's testimony and the DOT, and that the ALJ failed to identify and explain the discrepancy. (Id. at 10). The Court found that the ALJ erred in her decision when she relied on the VE's

---

[3]In the DOT, level 3 reasoning skills are defined as the skills to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DICOT 544.582-010. Level 2 reasoning skills are defined as the skills to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DICOT 503.685-014. Level 1 reasoning skills are defined as the skills to "[a]pply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DICOT 402.687-014.

testimony without first resolving the discrepancy. (Id.) The Magistrate vacated the ALJ's decision and remanded Plaintiff's case to the ALJ, so that she could consider and explain the VE's discrepancy with the DOT. (Id.)

In his objections, Defendant urges this Court to decline to adopt the Magistrate Judge's Report and Recommendation and to affirm the ALJ's decision in its entirety. (Doc. 14 at 1). Defendant asserts that, when determining which jobs claimants are able to perform, the ALJ must follow the guidelines mandated by the Social Security Administration in the CFR. (Id. at 2). According to the CFR, the surveillance system monitor position is unskilled, which correlates to an SVP level of 2, a skill level which Plaintiff's RFC indicates she is capable of performing. (Id. at 3-4). That the surveillance system monitor position has a reasoning level of 3 and thus is beyond Plaintiff's RFC, Defendant argues, "directly contravenes the Commissioner's regulatory definition of unskilled work set forth in SSR 00-4p." (Id.) Defendant argues that "it would be inconsistent with the Commissioner's regulatory scheme to rely upon the maximum reasoning levels in the DOT as evidence that the mental demands of [surveillance system monitor] exceed those for unskilled work," and that Defendant's position on this issue should be given deference. (Id. at 4).

For the following reasons, the Court will adopt the Magistrate's Report and Recommendation and remand the case for further proceedings.

### 1. SSR 00-4P Defines the Procedure the ALJ Must Follow When the VE's Testimony Conflicts with the DOT.

SSR-04p is a self-promulgated Social Security ruling that interprets Social Security regulations 20 C.F.R. § 404.1566(d),(e) and § 416.966(d),(e). Social Security rulings are binding at all levels of the adjudicative process. Walton v. Halter, 243 F.3d 703 (3d Cir. 2001). The

specific purpose of adopting SSR 00-4p was to clarify Social Security's standards for identifying and resolving conflicts between "occupational evidence provided by a VE or VS and information in the DOT." SSR 00-4p.

SSR 00-4p states that the Commissioner primarily relies on the DOT for information about the requirements of work in the national economy, and on testimony by the VE to resolve complex vocational issues. The ruling states that evidence provided by a VE during an administrative hearing should be consistent with the occupational information supplied by the DOT. Id. SSR 00-4p further provides that "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict." Id. Rather, the ALJ "must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than the DOT information." Id. In this Circuit, courts have interpreted this ruling to mean that the ALJ has an affirmative duty to ask a VE if a conflict exists between his opinion and the DOT before relying on the VE's testimony. Walker v. Astrue, 2010 WL 3167557, *5-6 (E.D. Pa. Aug. 10, 2010).

The Third Circuit has held that failure of the ALJ to comply with the requirements in SSR 00-4p to fully develop the record may result in remand of a claim by the district court. Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); see Williams v. Barnhart, 424 F. Supp. 2d 796, 801 (E.D. Pa. 2006); Walker, 2010 WL 3167557, at *5-6. However, the Third Circuit has also cautioned that remand is only appropriate where the VE's testimony is inconsistent with the DOT *and* there is no other substantial evidence in the record to support the ALJ's decision. Id. The inconsistencies are not fatal, and SSR 00-4p does not require remand, if substantial evidence exists in other portions of the record that can form an appropriate basis to support the ALJ's result. Id.

-10-

Here, the VE's testimony conflicts with the information contained in the DOT. The ALJ found that Plaintiff must be limited to jobs that only involve simple, repetitive tasks. (R. 17). The DOT lists surveillance system monitor work as having an SVP of 2 (and thus as qualifying as "unskilled" work under the CFR) but as also requiring level 3 reasoning. A RFC that limits a claimant to simple, repetitive tasks has been held to be inconsistent with a job requiring level 3 reasoning. *See* Hackett v. Barnhart, 395 F. 3d 1168, 1176 (10th Cir. 2005) ("Plaintiff retains the attention, concentration, persistence and pace levels required for simple and routine work tasks . . . This limitation seems inconsistent with the demands of level three reasoning.); Mead v. Barnhart, 2004 WL 2580744, *2 (D.N.H Nov. 15, 2004) ("A [DOT] reasoning [l]evel of 2, or higher, assumes that the applicant is capable of more than simple or repetitive tasks.").

The fact that the surveillance system monitor's SVP classifies it as "unskilled," and therefore within Plaintiff's SVP, does not neutralize or supplant the reasoning level conflict. A number of courts have found the DOT's reasoning levels are much more indicative of whether the claimant is capable of performing more than simple, repetitive tasks. E.g., Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997); Colon v. Astrue, No. 06-4971, Doc. No. 14 at 23-24; Doc. No. 15 (E.D. Pa. Nov. 13, 2007); Cooper v. Barnhart, 2004 WL 2381515, *4 (N.D. Okla. Oct. 15, 2004); Hall-Grover v. Barnhart, 2004 WL 1529283, *4 (D. Me. Apr. 30, 2004). Although SVP and GED reasoning level both address intellectual requirements of an occupation, they have different applications. "The DOT's explanation of SVP suggests that SVP relates to the vocational preparation required to perform a job and does not address whether a job entails simple tasks, while the . . . GED reasoning level pertains to the complexity of a job." Estrada v. Barnhart, 417 F. Supp. 2d 1299, 1302 n.3 (M.D. Fla. 2006); see Cooper, 2004 WL 2382525, at *4 (finding that a

-11-

limitation to simple tasks appears more relevant to a job's reasoning level, than to its SVP level, which focuses on vocational preparedness).

Accordingly, courts in this district and elsewhere have held, when considering an ALJ's adoption of testimony by a VE that a plaintiff can perform an occupation with a reasoning level higher than that allowed by the plaintiff's RFC, an apparent unresolved conflict exists and remand is required. E.g., Ellison v. Astrue, No. 08-2101, Doc. No. 15; Doc. No. 14 at 17-18 (E.D. Pa. Apr. 30, 2009) (approving and adopting magistrate's report and recommendation finding that a limitation to performing simple, routine tasks was inconsistent with performing the duties of jobs that required level 3 reasoning, including surveillance system monitor, and remanding the case); Colon, No. 06-4971, Doc. No. 15; Doc. No. 14 at 22-23 (approving and adopting magistrate's report and recommendation finding that a limitation to performing simple, routine, one to two step tasks was inconsistent with performing the duties of surveillance system monitor, and remanding the case).

Here, despite the DOT classification of surveillance system monitor as requiring level 3 reasoning, the VE testified Plaintiff could perform her past occupation. (R. at 630). In a hypothetical, the ALJ asked the VE whether an individual of Plaintiff's age, education and work experience who is "able to lift up to 10 lbs, sit for six hours, stand and walk for two hours, occasional postural activities, being limited to simple repetitive tasks with only occasional changes in the work settings," could perform any of Plaintiff's past relevant work. (Id.) The VE identified only the surveillance system monitor as "past relevant work" which Plaintiff could resume. (Id.) The VE explained only that the surveillance system monitor is "viable given that it's unskilled, repetitive and sedentary, [and] it doesn't require any postural." (Id.) Based on the VE's testimony,

-12-

the ALJ held Plaintiff is capable of performing past relevant work as a surveillance system monitor, and accordingly denied her claim at Step 4. (R. at 20).

Because the ALJ never inquired of the VE how Plaintiff can perform the surveillance system monitor job, which has a reasoning level of 3, consistent with her finding that Plaintiff can perform only simple, repetitive work, an "apparent unresolved conflict" exists requiring that the ALJ should have followed the SSR 00-4p procedure. Mead, 2004 WL 2580744, at *2 (holding that an "apparent unresolved conflict" exists whenever the VE fails to explain why his testimony is consistent with the DOT). The ALJ had the affirmative duty to discover and reconcile the discrepancy, and the ALJ never elicited an explanation from the VE. For this reason, remand is necessary so that the ALJ can follow the SSR-004p procedure for granting or denying disability claims.

### 2. The Record Does Not Provide "Substantial Evidence" That Plaintiff is Capable of Performing the Surveillance System Monitor Job.

In light of the Third Circuit's caution that remand is only appropriate where the VE's testimony is inconsistent with the DOT *and* there is no other substantial evidence in the record to support the ALJ's decision, Rutherford, 399 F.3d at 557, the Court will now consider whether the record here provides substantial evidence that Plaintiff can perform the job of surveillance system monitor. Defendant argues that the ALJ's decision that Plaintiff is able to work as a surveillance system monitor is supported by substantial evidence, despite the ALJ's procedural defect, because the VE considered Plaintiff's RFC along with her formal education and past work experience. Thus, Defendant argues, the ALJ's decision should be affirmed.

If the VE believed, based on Plaintiff's RFC, education and work experience, that Plaintiff

could actually perform at a GED reasoning level of three, he should have discussed these matters in his testimony. The VE never testified to this conclusion, nor discussed the factors of education and work experience in any detail. Instead, the VE was present when the ALJ asked Plaintiff a single question about her education (Question: "What's the highest grade you completed in school?" Answer: "Ninth" (R. 615)), and the VE merely listed Plaintiff's prior work history and each position's skill level (R. 629-630).

The ALJ's Report does not address or weigh Plaintiff's formal education and past work experience. Therefore, the Court cannot identify any evidence in the record that demonstrates how Plaintiff's education level and past work experience relate to her ability to perform a level three reasoning job.

Furthermore, Plaintiff argues that her depression makes it more difficult to perform at her previous mental capacity. In her report, the ALJ did not address the effect of Plaintiff's depression on her mental capacity. In regard to the depression, the ALJ merely stated, "She does not see a specialist." (R. 18). Additionally, the VE did not address Plaintiff's depression at all during his testimony. However, Plaintiff's depression is a factor that may affect her reasoning level. Plaintiff's depression may account for the apparent change in Plaintiff's reasoning from a level of 3 or higher when she worked as a surveillance system monitor to her current RFC, as found by the ALJ, which limits her to simple and repetitive tasks and correlates to a 1 or 2 reasoning level. However, there is not sufficient evidence on the record to allow this Court to determine whether Plaintiff's depression is a relevant factor, and how her mental health, together with her education and work experience, relate to her ability to perform at a job requiring a GED reasoning level of 3 or higher.

-14-

In sum, the Court cannot ignore the procedural error and affirm the ALJ's decision. An independent evaluation of the record here does not provide this Court with the substantial evidence necessary to reconcile the conflict between the VE's testimony and the DOT and to find that Plaintiff is capable of performing work with level 3 reasoning requirements. Because it is the function of the ALJ, not the courts, to evaluate the evidence, Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001), a remand is appropriate to give the ALJ the opportunity to analyze all evidence of record and to receive any additional evidence offered by the parties.

## VI. CONCLUSION

In conclusion, this case must be remanded to resolve the inconsistency between Plaintiff's RFC, the job identified by the VE as a prior job which Plaintiff can perform, and the requirements of that job as set forth in the DOT. The Court will adopt the Magistrate's Report and Recommendation and remand for further proceedings. An appropriate order follows.